2026 IL App (2d) 250451-U
No. 2-25-0451
Order filed January 12, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 25-CF-1769 |
| | ) ) | Honorable |
| EDILSON CUCUL YAXCAL, | ) ) | Salvatore LoPiccolo, David P. Kliment, |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice Kennedy and Justice McLaren concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court correctly determined that defendant's pretrial release would pose a real and present threat.

¶ 2    Defendant, Edilson Cucul Yaxcal, appeals the order of pretrial detention of the circuit court of Kane County, arguing that the court erred in finding that the State presented clear and convincing evidence that his pretrial release posed a real and present threat to the public. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4    On July 29, 2025, the State charged defendant with predatory sexual assault of a victim

under the age of 13 years old (720 ILCS 5/11-1.40(a)(1) (West 2024)) and unlawful restraint (*id.* § 10-3). That same day, the State filed its verified petition to deny defendant pretrial release, alleging that his pretrial release would pose a real and present threat to the safety of any person or the community. Also that day, a hearing commenced on the State's petition.

¶ 5 During the hearing, the State presented a police synopsis, describing how, on July 19, 2025, police responded to an Aurora residence for a report of criminal sexual assault to a three-year-old. There, the victim's mother told officers that, the day prior, her daughter was playing with a four-year-old cousin in her bedroom. Defendant entered the bedroom, forcefully removed the cousin, and locked the door. Once alone in the bedroom with the victim, he "touched" her vagina, causing her pain. After the victim reported the incident to her mother, her mother checked the victim's vaginal area and saw that it was "abnormally red and swollen." She confronted defendant—who she referred to as her cousin—who initially downplayed the event, telling her that the victim was just "afraid of him." After her parents contacted the police the following day, the victim was transported to a local hospital for a sexual assault examination—the results of which are not discussed in the record. Following the incident, both defendant and the victim's family moved out of the residence into separate homes.

¶ 6 On July 25, 2025, the victim was interviewed at the Kane County Child Advocacy Center. There, she confirmed to investigators that her uncle had touched her vagina. Also that day, officers detained defendant. On July 28, 2025, detectives interviewed defendant, who informed detectives of his immigration status. Defendant relayed that, in January 2023, he had first attempted to enter the United States from Guatemala but was "detained by immigration in Mexico and returned." Later, in March 2023, he had purportedly reentered the United States and eventually "turned himself in to immigration in Texas." At that time, defendant told police that the victim's mother was his only family in the country. Further, he "admitted to having touch[ed] the victim's ***

vagina" "by placing his right hand inside her pink pants" and "inserting a finger in between the vaginal lips." According to defendant, this was an isolated incident.

¶ 7 The State also introduced defendant's Public Safety Assessment (PSA) report into evidence. The PSA evaluates a defendant's likelihood of engaging in new criminal activity or failing to appear on future court dates. Each individual assessment is measured on a scale from one to six, with higher scores indicating a greater risk of recidivism or nonappearance. The defendant received a score of two for the new criminal activity assessment and a score of one for the failure to appear assessment.

¶ 8 The State argued that the proof was evident and presumption great that defendant committed a detainable offense—here, predatory criminal sexual assault—because defendant had already admitted to touching his minor niece's vagina. Additionally, defendant had drawn officers an outline of his hand in order to clarify which fingers he had used to touch and penetrate the victim.

¶ 9 The State next argued that defendant posed a real and present threat to the safety of any persons or the community, as evidenced by the sexual nature of the offense. Although the State recognized that defendant lacked a criminal history, it suggested that this was not a result of a clean record, but rather, as a result of defendant's undocumented immigration status. The State further contended that defendant's admission to being under the influence of alcohol at the time of the offense, as well as the fact that he lived with the victim, was indicative of defendant's "violent, abusive, or assaultive nature." The State identified the instant victim, as well as any other children "at large," as being particularly at risk if defendant were released. According to the State, certain statements by defendant underscored his dangerousness, namely, his confession. Concerning defendant's age and physical condition, the State ceded ignorance, stating, "again[,] we don't know much about this defendant because there is no ability to run LEADS criminal history on him."

¶ 10      Last, the State argued that no conditions could mitigate the threat posed by defendant's prospective release, as defendant had "no stable living conditions" and "no ties to the community."

¶ 11      Pertinently, defendant argued that the State's conclusion regarding his prospective dangerousness was "very much relying on just the circumstances of the instant offense." While the State had argued that he specifically posed a threat to the victim and her cousin, defendant pointed out that both minors had since moved to Chicago, while defendant now lived in a different Aurora residence with several other adult male friends and no children. Additionally, the PSA did not indicate a high risk of new criminal activity.

¶ 12      The court considered the parties' arguments. Concerning dangerousness, it noted the lack of relevant facts presented by the State:

> "Certainly while [defendant] was in the presence of the victim *** pretty much this doesn't really—this incident sort of happens out of no where. I don't know how long he's been living at that residence. Those questions weren't asked. I don't know how long he had been with the victim and her mother and her father. I don't know if that cousin lives at that address either. Those questions weren't asked.
>
> ***
>
> We have here that the—in the synopsis the victim's mother says she went to Chicago after this. I don't have information as to where she's at as we speak. I don't know if she's returned to that residence since *** defendant wasn't at the residence. None of that is in the synopsis.
>
> Also I don't have information as to where the defendant actually lives. Aurora has 200,000 people and that he lives with seven or eight guys at some unknown address also doesn't make me feel comfortable placing him on any type of GPS or EHM."

¶ 13      The court did, however, note the age difference between defendant and the victim, and that

defendant claimed to be intoxicated at the time of the assault. Nonetheless, the court reasoned that the offense didn't "seem to be alcohol induced" because of the "steps [defendant] took to get [the victim] alone." Given these "steps" and the fact that "there really is no explanation for this," the court agreed with the State that defendant's pretrial release would pose a real and present threat to the public. After finding that no conditions could mitigate such a threat, it granted the State's petition to detain.

¶ 14    On September 17, 2025, defendant filed his motion for relief, again arguing that the State had not established defendant's dangerousness. Specifically, the motion noted that much of the State's argument relied on speculation, given the sparse record. According to defendant, the only facts supporting detention were inherent elements of the underlying offense, which, by themselves, cannot warrant detention. On October 8, 2025, the court denied the motion.

¶ 15    Defendant timely appeals.

¶ 16                                II. ANALYSIS

¶ 17    Any person charged with a criminal offense in Illinois is presumed eligible for pretrial release. 725 ILCS 5/110-1.5, 110-2(a) (West 2024). To overcome this presumption, the State must prove, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense; (2) the defendant poses a real and present threat to the safety of any person or the community; and (3) no conditions could mitigate that threat. *Id.* § 110-6.1(e). Where a circuit court rules on a pretrial detention petition following a hearing where no live witnesses testified, we review the court's findings *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 21. Because no live witnesses testified at defendant's pretrial detention hearing, we review the circuit court's findings *de novo*. *Id.*

¶ 18    Here, defendant contends that the State failed to prove by clear and convincing evidence that his pretrial release would pose a real and present threat and that no conditions could mitigate

such a threat. We address both contentions in turn.

¶ 19    As we have noted *supra*, the Code presumes that *all* criminal defendants—which would naturally include those charged with predatory criminal sexual assault—are eligible for pretrial release. 725 ILCS 5/110-1.5, 110-2(a) (West 2024). Thus, because no offenses are subject to automatic detention, the State must present facts beyond a general recitation of the basic elements of the offense in order to have a defendant detained pending trial. The following factors may be considered in making a dangerousness determination: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) any specific threatened persons; (4) a defendant's statements indicating further threat; (5) the defendant's age and physical condition; (6) the victim's age and physical condition; (7) a defendant's access to weapons; (8) whether defendant was on pretrial release or parole at the time of his arrest; and (9) any other relevant factors. *Id.* § 110-6.1(g).

¶ 20    Here, the nature and circumstances of the offense evince a high level of dangerousness. Defendant admitted to removing the victim—his own family member—from her cousin, locking her in a room, and forcefully penetrating her with his fingers. Thus, he did not only assault the victim, but he also physically isolated and restrained her, preventing her escape. The synopsis also reveals that defendant completed the assault while other family members were home, evincing depravity and opportunism. Regarding the sixth relevant factor—the alleged victim's age—the child was only three years old, making her particularly defenseless. Further, according to the victim's mother, the young girl was injured by the assault. In all, given the brazen, opportunistic nature of the offense, the accompanying, physical restraint, and the delicate age of the injured victim, the trial court correctly found defendant's pretrial release to pose a real and present threat to the public.

¶ 21    Nonetheless, defendant argues that the record contradicts any dangerousness finding, as

defendant no longer lives with children. We disagree. As a starting point, we note that defendant's address and living situation is not detailed in the record. All that was referenced was that defendant lives in Aurora, with "around seven or eight" other adults and no children. While the record does not reveal defendant's address, his demonstrated willingness to exploit a vulnerable child in even a familiar, supervised environment undermines his claim that the alleged absence of children in his current residence mitigates the risk he poses.

¶ 22    Finally, the trial court correctly found that no conditions could mitigate the threat posed by defendant's pretrial release. The task of supervising and ensuring the compliance of a defendant— who, by clear and convincing evidence, has sexually assaulted a child—is formidable. Without *reliable* information about the defendant's criminal background, address, work history, etc., a trial court cannot set conditions. See *People v. Gonzalez-Zuniga*, 2024 IL App (2d) 230538-U.

¶ 23    Here, the record reveals that defendant has no ties to the community aside from the victim's mother, and he has described his presence in the U.S. as being transient. Most importantly, however, the record does not reveal an address for defendant. It is axiomatic that, to set conditions for defendant, the trial court would need a fixed address at a minimum, as it is imperative that the court and supervising authorities can monitor defendant at all times. Otherwise, conditions would be futile. Given the strong evidence that defendant lacks any ties to the community, it appears that no conditions could be supervised or enforced. For this reason, we agree that nothing short of detention could mitigate the threat posed by defendant's release.

¶ 24                                    III. CONCLUSION

¶ 25    For the reasons stated, we affirm the order of the circuit court of Kane County granting the State's petition to detain.

¶ 26    Affirmed.